IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD E. WOOLSLAYER, )<br><br>Plaintiff, )<br><br>vs. )<br><br>MICHAEL A. DRISCOLL, President Indiana )<br>University of PA, a university of the )<br>Pennsylvania State System of Higher )<br>Education, in his official and individual )<br>capacities, )<br><br>Defendant. ) | Civil Action No. 20-573 |

## MEMORANDUM OPINION

After Plaintiff Donald E. Woolslayer ("Woolslayer") sent an email to colleagues at the Indiana University of Pennsylvania ("IUP") in which he advised them of the existence of a credible risk of contracting Covid-19, he was terminated the next day by IUP's President, Defendant Michael A. Driscoll ("Driscoll"). Woolslayer subsequently commenced this lawsuit, under 42 U.S.C § 1983, in which he alleges a claim of First Amendment retaliation. Driscoll has moved to dismiss the Complaint.

For the reasons below, Driscoll's motion will be denied.

### I.   Procedural History

Woolslayer commenced this lawsuit in April 2020 against Driscoll in his individual capacity and in his official capacity as President of IUP. (ECF No. 1 ("Compl.").) The Complaint seeks both legal and equitable relief, including reinstatement to his prior employment. (*Id.* at 5–6.) Driscoll responded with this motion to dismiss (ECF No. 10) which has been fully briefed. (ECF Nos. 11, 13.) Accordingly, the matter is ripe for disposition.

## II.     Factual Allegations

IUP is a university within the Pennsylvania State System of Higher Education ("PASSHE"). (Compl. ¶ 3.) Woolslayer alleges that he worked as IUP's Director of Facilities Operations from April 2016 until March 2020. (*Id.* ¶ 6.) He also asserts that, throughout his tenure, his supervisors rated his performance as fully acceptable. (*Id.* ¶ 12.)

According to the Complaint, the Director of Facilities Operations is responsible for the physical maintenance and operation of IUP facilities. (*Id.* ¶¶ 7, 8.) Woolslayer alleges that the Director of Facilities Operations at IUP has no power to speak in the name of any IUP policy maker and is not involved in matters concerning the scope and nature of IUP functions or education policies. (*Id.* ¶¶ 9, 10, 11.)

In late March 2020, Woolslayer discovered that the spouse of one of his employees had been diagnosed with COVID-19. (*Id.* ¶ 13.) As alleged in the Complaint, COVID-19 is caused by a highly infectious Coronavirus that created what the World Health Organization called a pandemic and the Governor of Pennsylvania declared to have caused a statewide public health emergency. (*Id.*) Woolslayer determined that he should share this information with IUP employees and caution them to take the necessary steps to avoid infection. (*Id.* ¶ 14.) Woolslayer's supervisors and members of IUP's Human Resources Department ("HR") disagreed with him and recommended that Woolslayer not alert employees or advise them to take the attendant precautions. (*Id.* ¶ 15.)

Nonetheless, on March 30, 2020, Woolslayer notified employees in a multi-addressed email that "one of our colleagues is self-quarantined due to exposure to COVID-19."[1] (*Id.* ¶ 16.) (*Id.*) Given their colleague's exposure to COVID-19, Woolslayer also advised employees to seek medical advice to determine their risk and their course of action. (*Id.* ¶ 17.)  HR objected to this notification.

The next day, Driscoll fired Woolslayer, allegedly because Driscoll and senior leadership at IUP had lost confidence in Woolslayer's ability to effectively perform his assigned duties as the Director of Facilities Operations. (*Id.* ¶ 18.) According to Woolslayer, Driscoll offered no other reason for firing him. (*Id.* ¶ 19.)

## III.    Standard of Review

A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting

---

[1] Driscoll has appended Woolslayer's March 30, 2020 email to its supporting brief. (ECF No. 11-1.) It is appropriate for the Court to consider this email in resolving this motion because it is detailed in the Complaint and comprises the speech that Woolslayer alleges was constitutionally protected. *See Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) ("In deciding a Rule 12(b)(6) motion, a court . . . consider[s] only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("[T]he primary problem raised by looking to documents outside the complaint— lack of notice to the plaintiff—is dissipated where the plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.").

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210–11.

To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV.    Discussion

Section 1983 provides a private citizen with the right to sue any person who, under color of state law, deprives him of a right or privilege secured by the Constitution of the United States. 42 U.S.C. § 1983. This statute does not create substantive rights but instead "provides only

4

remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a viable § 1983 claim, a plaintiff "must establish that []he was deprived of a federal constitutional or statutory right by a state actor." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). Because there is no question Driscoll acted under color of state law, the Court's analysis focuses on whether Woolslayer has alleged a deprivation of his constitutional rights.

Woolslayer asserts that Driscoll fired him in retaliation for exercising his First Amendment right to free speech.[2] To allege a First Amendment retaliation claim based on a violation of the right to free speech, a plaintiff must establish "(1) he engaged in constitutionally protected conduct; (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link existed between the constitutionally protected conduct and the retaliatory action." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019).

Relying on the fact that IUP is a PASSHE institution, Driscoll contends that Woolslayer, a public employee, has failed to establish that he engaged in constitutionally protected conduct. Driscoll also argues that Woolslayer's official capacity claims against him are barred by the Eleventh Amendment.

## A.  Did Woolslayer engage in constitutionally protected conduct?

While it is true that "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom," *Garcetti v. Ceballos*, 547 U.S. 410, 418

---

[2] The First Amendment to the United Stated Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. Amend. 1. "First Amendment freedoms are protected by the Fourteenth Amendment from invasion by the States." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907 n.43 (1982).

(2006), "public employees do not surrender all their First Amendment rights by reason of their employment." *Id.* at 417. In delineating the scope of a public employee's right under the Free Speech Clause to speak without fear of retaliation by his or her employer, the Supreme Court has instructed courts to strike "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). The Supreme Court has further explained that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution will not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.

Based on this guidance, the Third Circuit has developed a three-prong inquiry to determine if the First Amendment protects a public employee's speech: "(1) whether the employee spoke as a citizen; (2) whether the statement involved a matter of public concern; and (3) whether the government employer nevertheless had 'an adequate justification for treating the employee differently from any other member of the general public' based on its needs as an employer." *Baloga*, 927 F.3d at 753 (quoting *Palardy v. Twp. of Millburn*, 906 F.3d 76, 81 (3d Cir. 2018)). Driscoll argues that Woolslayer's claim fails to meet both the first and the second prong.

### 1. Woolslayer spoke as a citizen

Driscoll contends that Woolslayer did not speak as a citizen. In support of this contention, he observes that the only allegedly protected activity referenced in the Complaint is a single email sent from Woolslayer's work account exclusively to other IUP employees. Driscoll then concludes that the email was sent in Woolslayer's capacity as an employee and therefore fails to qualify as a protected activity. Driscoll's conclusion is untenable for a several reasons, however.

The mode of Woolslayer's speech (work account) or his audience (only IUP employees) is not dispositive with respect to whether Woolslayer spoke as a citizen. Indeed "[m]any citizens do much of their talking inside their respective workplaces, and it would not serve the goal of treating public employees like 'any member of the general public' . . . to hold that all speech within the office is automatically exposed to restriction." *Garcetti*, 547 U.S. at 420–21 (quoting *Pickering*, 391 U.S. at 573). Thus, the Court rejects Driscoll's contention that Woolslayer's speech must have been as an employee and not as a citizen simply because it was made using his work account and addressed solely to other IUP employees.

In order to determine if Woolslayer engaged in protected activity, that is, spoke as a citizen, the relevant inquiry is whether "the speech at issue is itself ordinarily within the scope of [Woolslayer's] duties . . . " *Lane v. Franks*, 573 U.S. 228, 240 (2014). This "practical" inquiry, *Garcetti*, 547 U.S. at 424, focuses on whether Woolslayer's speech was "part of the work [he] was paid to perform on an ordinary basis." *De Ritis v. McGarrigle*, 861 F.3d 444, 454 (3d Cir. 2017) (quoting *Flora v. Cty. of Luzerne*, 776 F.3d 169, 180 (3d Cir. 2015)).

Woolslayer asserts in his Complaint that the Director of Facilities Operations is responsible for the physical maintenance and operation of IUP facilities. (Compl. ¶¶ 7, 8.) He also alleges that the duties of this position do not include the power to speak in the name of any IUP policy maker, nor is the Director of Facilities Operations involved in matters concerning the scope and nature of IUP functions or education policies. (*Id.* ¶¶ 9, 10, 11.) Accepting these allegations as true and construing the Complaint in the light most favorable to Woolslayer, his duties did not encompass alerting IUP employees of a colleague's exposure to a highly contagious disease and advising them to seek medical advice. Because the speech at issue was not part of the work he was paid to perform

on an ordinary basis, the Court concludes that the Complaint adequately alleges that Woolslayer spoke as a citizen.

2.   Woolslayer's speech involved a matter of public concern

Next, Driscoll argues that Woolslayer's speech did not involve a matter of public concern. According to Driscoll, the health status of a colleague's spouse and the colleague's subsequent self-quarantine is not a matter of public concern unless that colleague had exposed other employees to infection. Because there is no reference in Woolslayer's email of such secondary exposure, Driscoll maintains that the speech at issue fails to rise to the level of a public concern.

A matter is of public concern for First Amendment purposes if it "can be fairly considered as relating to any matter of political, social or other concern to the community." *Starnes v. Butler Cty. Court of Common Pleas, 50th Judicial Dist.*, 971 F.3d 416, 429 (3d Cir. 2020) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 242–43 n.25 (3d Cir. 2006)). Whether an employee's speech addresses a matter of public concern "turns on the 'content, form, and context' of the speech." *Lane*, 573 U.S. at 241 (quoting *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)).

Both the content and the context of Woolslayer's email suggest that he was speaking on a matter of public concern. The content of Woolslayer's email, in which he alerted IUP employees that a colleague had been exposed to a highly contagious disease and urged them to take precautions to protect themselves, reasonably leads to the conclusion that he was speaking on a matter of significant public concern. The public import of Woolslayer's email is underscored by its context: it was sent at a time when COVID-19 had caused a statewide public health emergency and had been declared a pandemic. This context bolsters the conclusion that Woolslayer spoke on a matter of public concern, that being the health and safety of not only the IUP community, but also those beyond the immediate community.

Woolslayer has sufficiently pleaded that he spoke as a citizen on a matter of public concern. Therefore, based upon the allegations of the Complaint, Woolslayer engaged in constitutionally protected conduct.

### B.  Is Woolslayer's official capacity claim barred by the Eleventh Amendment?

Driscoll also seeks dismissal of Woolslayer's official capacity claim against him based upon Eleventh Amendment immunity.

The Eleventh Amendment "has been interpreted by the Supreme Court to shield States and certain State-affiliated entities from suits for damages in federal court." *Allen v. New Jersey State Police*, No. 19-3138, 2020 WL 5405373, at *5 (3d Cir. Sept. 9, 2020) (quoting *Bradley v. W. Chester Univ. of Pa. State Sys. Of Higher Educ.*, 880 F.3d 643, 654 (3d Cir. 2018)). Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because "official capacity suits generally represent only another way of pleading an action against the state." *Betts v. New Castle Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) (citing *Lombardo v. PA. Dept. of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir.2008)).

The Third Circuit has held that the PASSHE and its universities, such as IUP, are entitled to Eleventh Amendment immunity. *Bradley*, 880 F.3d at 660. For that reason, IUP's employees, like Driscoll, share in the Commonwealth's Eleventh Amendment immunity if they are sued in their official capacities. That does not end the Court's analysis, however, because Woolslayer asserts that he has brought a claim against Driscoll in his official capacity pursuant to *Ex parte Young*, 209 U.S. 123, 159 (1908) and its progeny, and is seeking reinstatement and other declaratory and injunctive relief. (Compl. ¶ 4.)

The doctrine of *Ex parte Young* provides a narrow but well-established exception to Eleventh Amendment immunity in lawsuits seeking prospective injunctive relief. This doctrine "rests on the premise . . . that when a federal court commands a state official to do nothing more

than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011). The Supreme Court has held that "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002)). Woolslayer's Complaint satisfies that straightforward inquiry.

The Third Circuit Court of Appeals has explained that "[w]hen the relief sought is prospective injunctive relief, the request 'is ordinarily sufficient to invoke' the [doctrine of *Ex parte Young*] . . ." *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 179 (3d Cir. 2002) (quoting *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 281 (1997)). Here, as a review of the Complaint demonstrates, Woolslayer seeks reinstatement and other declaratory and injunctive relief" against Driscoll in his official capacity. (Compl. ¶ 4.) A "claim for reinstatement . . . is the type of injunctive, 'forward-looking' relief cognizable under *Ex parte Young*." *Koslow*, 302 F.3d at 179; *see also Melo v. Hafer*, 912 F.2d 628, 635–36 (3d Cir. 1990) (holding that the district court erred insofar as it dismissed the plaintiffs' claim for reinstatement). Therefore, the Complaint sufficiently states a claim against Driscoll in his official capacity under the doctrine of *Ex parte Young*.

Relying on the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), Driscoll argues that the doctrine of *Ex parte Young* in inapplicable because termination from employment is discrete and complete event for which injunctive relief is not an appropriate remedy. The Court disagrees. Woolslayer's "alleged wrongful discharge is a

10

continuing violation; as long as [Driscoll] keeps him out of . . . [the Director's] position . . . [Driscoll] acts in what is claimed to be derogation of [Woolslayer's] constitutional rights." *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986). Put another way, the harm arising from an unconstitutional discharge is ongoing, even if the discharge itself is discrete.

Accepting the allegations of the Complaint as true, the harm caused by Woolslayer's unconstitutional termination is ongoing and the equitable relief he seeks from Driscoll in his official capacity is prospective. Therefore, Woolslayer's official capacity claim against Driscoll is not barred by the Eleventh Amendment under the doctrine of *Ex parte Young*.

**V. Conclusion**

For the reasons set forth above, Driscoll's motion to dismiss the Complaint will be denied. An appropriate order will follow.

BY THE COURT:

s/ Patricia L Dodge
PATRICIA L. DODGE
United States Magistrate Judge

Date: October 8, 2020